## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21371-KING/DAMIAN

VARCAMP PROPERTIES, LLC, and
JV HOLDINGS 1400, LLC,

      Plaintiffs,

vs.

CITY OF MIAMI BEACH,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## THE CITY OF MIAMI BEACH'S MOTION TO DISMISS BASED ON
## STATUTES OF LIMITATIONS AND/OR SOVEREIGN IMMUNITY [ECF NO. 6]

THIS CAUSE is before the Court on Defendant, City of Miami Beach's (the "City"), Motion to Dismiss Plaintiffs' Amended Complaint Based on Statutes of Limitations and/or Sovereign Immunity (the "Motion to Dismiss"), filed May 10, 2022. [ECF No. 6]. This matter was referred to the undersigned by the Honorable James Lawrence King, United States District Judge, for all such judicial proceedings as are permissible under the Magistrates' Act and the Rules of Court for the Southern District of Florida. [ECF No. 11]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the Motion, the parties' memoranda [ECF Nos. 9 and 10], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. The undersigned also heard from the parties, who appeared, through counsel, for a hearing on December 16, 2022. For the reasons that follow, the undersigned recommends that the City's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 6] be denied.

## I.    BACKGROUND

This is an action for inverse condemnation brought by two property owners alleging the City's 2016 roadway improvements cause "persistent flooding" that damages their properties and amounts to an appropriation or taking.

### A. *The Allegations*[1]

Plaintiffs, Varcamp Properties, LLC and JV Holdings 1400, LLC (collectively, "Plaintiffs"), are the respective owners of the properties located at 1400 West Avenue, Miami Beach, Florida 33139 (the "1400 Parcel") and 1315 14th Street, Miami Beach, Florida 33139 (the "1315 Parcel") (collectively, the "Properties"). [ECF No. 5-9 ("Am. Compl.") at ¶ 6]. The Properties were each improved with a two-story residential structure built in the early 1900s and are currently used as short-term rental units. *Id.* at ¶¶ 7–8, 25. The 1400 Parcel abuts the intersection of 14th Street and West Avenue, and the 1315 Parcel fronts 14th Street. Both 14th Street and West Avenue are public rights of way within the exclusive control of the City. *Id.* at ¶ 9. As alleged in the Amended Complaint, the Properties' stormwater drainage systems were designed to overflow onto 14th Street and West Avenue and have never been required to retain stormwater on-site. *Id.* at ¶¶ 10–12. According to Plaintiffs, this was the common method of stormwater management at the time the Properties were developed, and the Properties are lawfully permitted to continue directing stormwater onto 14th Street. *Id.* at ¶¶ 11, 13.

In 2016, the City made roadway improvements to 14th Street and West Avenue involving significant elevation of the roadway (the "Roadway Improvements"). *Id.* at ¶ 14.

---

[1] The following factual allegations are taken from the Amended Complaint and accepted as true for purposes of considering the Motion to Dismiss.

According to Plaintiffs, "[t]he design and construction of the Roadway Improvements failed to consider the impacts that drastically changing the elevation of the roadway would have on the Properties' drainage ability." *Id*. That is, as alleged in the Amended Complaint, the Roadway Improvements cause stormwater from 14th Street and West Avenue and adjacent properties to be redirected, or to flow in from the roadway, onto the Properties. *Id.* Additionally, Plaintiffs allege the Properties can no longer redirect excess stormwater onto 14th Street and West Avenue as they were originally designed to do. *Id.*

Plaintiffs allege that after the Roadway Improvements, "[i]n August 2017, the Properties flooded following a rainfall event." *Id.* at ¶ 15. Plaintiffs further allege that "[b]etween August and September 2017 Plaintiffs learned that the stormwater system associated with the Roadway Improvements, which consists of certain pump stations in the vicinity of the Properties, had failed, thereby causing flooding of the Properties." *Id.* at ¶ 16. And, Plaintiffs allege that "[a]gain, in June 2020 and February 2021, the stormwater system associated with the Roadway Improvements failed causing flooding and additional damage to the Properties." *Id.* at ¶ 18.

According to Plaintiffs, since the Roadway Improvements were completed, "the Properties have continuously flooded during moderate to severe rainfall events." *Id.* at ¶ 17. Plaintiffs further allege the on-going nature of the flooding deprives them of substantially all reasonable and beneficial use of the Properties. *Id.* at ¶ 18. Specifically, they allege that "during moderate to severe rainfall events, several inches of water enter the habitable spaces of the Properties, making the Properties uninhabitable." *Id.* According to the Amended Complaint, since the Roadway Improvements, each time the Properties experience such a flooding event, their structural foundation is damaged. *Id.*

3

Plaintiffs claim that the "changed elevation of the roadways without proper harmonization with the Properties or precautions when pumps fail, causes the flow of stormwater to reverse." *Id.* at ¶ 21. Thus, according to Plaintiffs, the City's stormwater management system associated with the Roadway Improvements does not prevent, or even mitigate, the flooding of the Properties that is caused by the City's Roadway Improvements. *Id.* at ¶ 22. Plaintiffs maintain it is reasonable to expect that future rain events will continue flooding the Properties, and, therefore, if the situation is not remedied, the flooding caused by the Roadway Improvements has the immediate threat of becoming a permanent, reoccurring condition. *Id.* at ¶ 23.

Based on these allegations, Plaintiffs assert the City knew or should have known that the Properties were designed to drain onto 14th Street and West Avenue yet took no steps to harmonize the Roadway Improvements with the Properties' drainage system, or otherwise ensure the Roadway Improvements would not rescind Plaintiffs' drainage rights or consider how the changed elevation would redirect the City's stormwater to the Properties. *Id.* at ¶ 24.

Currently, the Properties operate as legally nonconforming short-term rentals, which are no longer permitted uses pursuant to the City's zoning regulations. *Id.* at ¶ 25. Therefore, according to Plaintiffs, any redevelopment of the Properties would force them to forgo the grandfathered status that presently permits them to operate the Properties as short-term rentals. *Id.*

Plaintiffs claim that the above-described circumstances amount to a taking by the City, as well as negligence.

### B.  *Procedural History*

On August 5, 2021, Plaintiffs initiated this action by filing a complaint in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging inverse condemnation claims against the City pursuant to Article X, Section 6 of the Florida Constitution (Count I) and the Fifth and Fourteenth Amendments to the United States Constitution (Count II). [ECF No. 1-2 at 5–16]. Plaintiffs filed the Amended Complaint— now the operative pleading -- on April 4, 2022, while the action was pending in state court. In the Amended Complaint, Plaintiffs reallege their prior inverse condemnation claims under state and federal law, and they include a third count alleging negligence under Florida law (Count III). Notably, in Count III of the Amended Complaint, Plaintiffs allege they complied with conditions precedent to asserting the negligence claim, including by "providing notice of claim to the City pursuant to Section 768.28, Florida Statutes." Am. Compl. at ¶ 2 of Count III.[2] Plaintiffs did not attach any documents to their Amended Complaint nor did they indicate that any documents were incorporated by reference.

On May 3, 2022, the City removed the state court action to this Court pursuant to Title 28, United States Code, Sections 1441 and 1446. [ECF No. 1]. One week later, on May 10, 2022, the City filed the Motion to Dismiss now before the Court. [ECF No. 6]. As of the date of this Report, the Court has not issued a scheduling order in the case.

---

[2] In Count III of the Amended Complaint, Plaintiffs restarted their paragraph numbering at one.

**C.** *The City's Motion To Dismiss*

The City seeks dismissal of all claims in the Amended Complaint as time barred. The City also moves to dismiss the negligence claim in Count III pursuant to the doctrine of sovereign immunity.

In the Motion to Dismiss, the City argues that all of Plaintiffs' claims are barred by the applicable statutes of limitations because the claims accrued at the first flooding event at the Properties, which, according to the City, occurred on August 1, 2017, whereas Plaintiffs commenced this action on August 5, 2021—*three* days after the statute of limitations expired.[3] Mot. at 2. Additionally, the City asserts that Plaintiffs' negligence claim is barred by the doctrine of sovereign immunity because Plaintiffs failed to provide a timely notice of claim within three years of the claim accruing, as required by Section 768.28(6) of the Florida Statutes. *Id.* The City further argues that, even if Plaintiffs had timely presented their notice of claim, the City is immune from Plaintiffs' negligence claim because the claim is premised solely on discretionary planning-level decisions for which the City has not waived immunity from suit or liability arising from such decisions. *Id.*

In their joint response to the Motion to Dismiss, Plaintiffs maintain that their inverse condemnation claim under the Florida Constitution (Count I) is not time barred because the claim did not accrue on August 1, 2017, or, as the City argues, on the date of the first flooding event. And, as for their claim under the Fifth Amendment to the United States Constitution (Count II), Plaintiffs argue this claim is not subject to the same four-year limitations period applicable to the Florida constitutional claim but is, instead, subject to a six-year limitations

---

[3] Because August 1, 2021, was a Sunday, the limitation period expired on August 2, 2021, according to the City.

period. Plaintiffs also argue the City is not entitled to sovereign immunity from the negligence claim in Count III because infrastructure design, installation, and maintenance are all operational level functions.

## II.    APPLICABLE LEGAL STANDARDS

### A. *General Pleading Standards*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what a plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a Rule 12(b)(6) motion, a court generally may not look beyond the pleadings. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). The pleadings include any information attached to a complaint. Fed. R. Civ. P. 10(c); *Crenshaw v. Lister*, 556 F.3d 1283, 1291 (11th Cir. 2009). However, a district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

**B.** *Standard For Review Of Motions To Dismiss On Statute Of Limitations Grounds*

When a complaint is challenged on statute of limitations grounds, the Court applies the same standard and accepts the allegations in the complaint as true. *See United States v. Stricker*, 524 F. App'x 500, 505 (11th Cir. 2013).

A complaint can be dismissed on statute-of-limitations grounds "only if it is apparent from the face of the complaint that the claim is time-barred." *Beach Cmty. Bank v. CBG Real Estate LLC*, 674 F. App'x 932, 934 (11th Cir. 2017) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Generally, the statute of limitations is raised as an affirmative defense rather than by way of a motion to dismiss. *See La Grasta*, 358 F.3d at 845 ("A statute of limitations bar is an affirmative defense and plaintiffs are not required to negate an affirmative defense in their complaint."); *see also Am. Airlines, Inc. v. Vidal*, No. 09-21245-CIV, 2009 WL 10669069, at *1 (S.D. Fla. Sept. 22, 2009) ("The Statute of Limitations is generally an affirmative defense pled under [Federal Rule of Civil Procedure 8(a)].").

A court may dismiss a complaint as time barred "only if it appears beyond a doubt that [the plaintiff] can prove no set of facts" showing the claims are timely. *Am. Marine Tech., Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1080 (S.D. Fla. 2019) (Bloom, J.)

8

(quoting *Keira v. U.S. Postal Inspection Serv.*, 157 F. App'x 135, 136 (11th Cir. 2005) (internal quotations omitted)).

## III.   DISCUSSION

With the foregoing in mind, the undersigned addresses the City's arguments for dismissal of the Amended Complaint.

### A.   *Statutes of Limitations – Inverse Condemnation (Counts I and II)*

The City claims that the state and federal inverse condemnation claims are barred by the applicable statutes of limitations.

#### 1.   Count I – The State Inverse Condemnation Claim

In Count I of the Amended Complaint, Plaintiffs assert a claim for inverse condemnation pursuant to Article X, Section 6 of the Florida Constitution. The parties agree that an inverse condemnation claim under Florida law is subject to a four-year statute of limitations. *See* Fla. Stat. § 95.11(3)(p); *see also 3630 Inv. Corp. v. Miami-Dade Cnty.*, No. 17-22925-CIV, 2018 WL 3213489, at *2 (S.D. Fla. June 29, 2018) (Moreno, J.). "The general rule of law is that a property owner must bring an inverse condemnation claim within four years of the physical invasion of the property caused by governmental action." *Judkins v. Walton Cnty.*, 128 So. 3d 62, 64 (Fla. 1st DCA 2013). The parties do not agree, however, as to when the statute of limitations began to run.

In the Motion to Dismiss, Defendants argue that Plaintiffs' claim accrued, and, therefore, the statute of limitations began to run, on August 1, 2017, on the grounds that is the date of "the physical invasion of the Properties by the City's actions." Therefore, because Plaintiffs did not file the complaint until August 5, 2021 – three days after expiration of the four-year limitations period – their claim is barred. *See* Mot. at 7.

Plaintiffs respond that their claim did not accrue until they became aware that the Properties would continue to flood after each moderate to severe rain event due to the misdirected stormwater and the failing drainage systems. Response at 7.

The issue for the Court, then, is when Plaintiffs' inverse condemnation claim accrued for statute of limitations purposes.

a. <u>The Allegations In The Amended Complaint</u>

The City argues that Count I must be dismissed because Plaintiffs' inverse condemnation claim accrued on August 1, 2017, more than four years before Plaintiffs filed the Complaint. As set forth above, a complaint will be dismissed on statute-of-limitations grounds "only if it is apparent from the face of the complaint that the claim is time-barred." *See Beach Cmty. Bank*, 674 F. App'x at 934. In this case, it is not apparent from the face of the Amended Complaint that Plaintiffs' inverse condemnation claim in Count I is time-barred.

In the Amended Complaint, Plaintiffs allege: "In August 2017 the Properties flooded following a rainfall event." Am. Compl. at ¶ 15. Plaintiffs go on to allege that "[b]etween August and September 2017 Plaintiffs learned that the stormwater system associated with the Roadway Improvements, which consists of certain pump stations in the vicinity of the Property, had failed, causing flooding of the Properties." *Id.* at ¶ 16. They then allege that "in June 2020 and February 2021, the stormwater system associated with the Roadway Improvements failed causing flooding and additional damage to the Properties." *Id.* at ¶ 18. Notably, Plaintiffs do not allege anywhere in the Amended Complaint that the first rainfall event or any resulting flooding occurred on August 1, 2017, but, instead, only indicate the rainfall event occurred "in August 2017."

Thus, it is not apparent from the face of the Amended Complaint that the inverse condemnation claim accrued on August 1, 2017. To the contrary, even if the first rainfall event is the date of accrual, the Amended Complaint indicates that event was in August 2017, such that the claim would have accrued on some less specific date in August. Given that Plaintiffs filed the Complaint within four years of August 2017, it appears, viewing the allegations in the Amended Complaint in the light most favorable to Plaintiffs, that the Complaint was timely filed. *See MSP Recovery Claims, Series LLC v. Metro. Gen. Ins. Co.*, 40 F.4th 1295, 1302 (11th Cir. 2022) (at the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff"). Or, put differently, it is not apparent from the face of the Amended Complaint that the Complaint was not timely filed.

Accordingly, based on the allegations in the Amended Complaint, the Motion to Dismiss must be denied as to Count I.

  b.  <u>Consideration Of Documents Outside The Complaint</u>

The City urges the Court to consider Plaintiffs' Notice of Claim, which the City attached to its Motion to Dismiss and on which the City relies in support of its argument that Plaintiffs' claims actually accrued on August 1, 2017. *See* ECF No. 6-1. In the Notice of Claim, Plaintiffs state: "Significant flooding and damage to the exterior and interior of the Properties began in 2017 and flood events continue in 2021." *Id*. at 2. Plaintiffs further state, in the Notice of Claim, that as a result of the City's Roadway Improvements, "stormwater now discharges from the abutting roads onto the Properties during rain events." *Id*. Plaintiffs then identify "flooding events" to include:

- Flooding event on August 1, 2017

- Flooding event in June 2020

- Flooding event in February 2021

*Id.* Based on Plaintiffs' specification in the Notice that a flooding event occurred on August 1, 2017, Defendants argue Plaintiffs' claim accrued on that exact date.

As indicated above, the Notice of Claim was attached to the City's Motion to Dismiss. It was not attached to nor incorporated by reference in Plaintiffs' Amended Complaint. Rather, Plaintiffs make one general reference to the Notice in support of the general allegation in Count III of the Amended Complaint that that Plaintiffs complied with conditions precedent to the filing of their negligence claim: "Plaintiffs have complied with all conditions precedent, including but not limited to providing notice of claim to the City pursuant to Section 768.28, Florida Statutes." Am. Compl. at ¶ 2 of Count III. Notably, no reference to the Notice of Claim was included in prior versions of the complaint which asserted only inverse condemnation claims. Rather, the reference to the Notice was only added in support of the negligence claim in Count III of the Amended Complaint.

A district court may consider a document attached to a motion to dismiss if it is (1) central to the party's claim, and (2) its authenticity is not challenged. *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Here, Plaintiffs do not challenge the authenticity of the Notice of Claim attached to the Motion to Dismiss. And although Plaintiffs have not challenged the centrality of the Notice to their claims, the undersigned finds that it is not central such that it may be considered on determination of the Motion to Dismiss.

In determining whether a document is central to a party's claims, courts consider such factors as: whether the claims depend on the documents, *see Botero v. S. Fla. Pain & Rehab. Ctr.*

*Corp., Inc.*, No. 12–20924-CIV, 2012 WL 3614329, at *3 (S.D. Fla. Aug. 21, 2012) (Moreno, J.); whether the contents of the documents are alleged in the complaint, *Gonzalez v. Watermark Realty Inc.*, No. 09-60265-CIV, 2010 WL 1299740, at *2 (S.D. Fla. Mar. 30, 2010) (Moreno, J.); *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir. 1999); whether the documents form a "necessary part of [the plaintiff's] effort to make out [his] claim," *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see, e.g., Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002); and whether the documents are referred to *throughout* the complaint. *See Infante v. Bank of America Corp.*, 468 F. App'x 918, 921 n.2 (11th Cir. 2012) (unpublished); *Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, No. 1:15-CV-22130, 2016 WL 9526696, at *3 (S.D. Fla. Mar. 11, 2016) (Ungaro, J.); *Int'l Brotherhood of Teamsters v. Amerijet Int'l, Inc.*, 932 F. Supp. 2d 1336, 1344 (S.D. Fla. 2013) (Moreno, J.) (same); *Gonzalez*, 2010 WL 1299740, at *2 (same). If the documents contradict the general and conclusory allegations of the pleading, then the documents govern. *Goldberg v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 143 F. Supp. 3d 1283, 1291 (S.D. Fla. 2015) (Williams, J.) (citing *Crenshaw v. Lister*, 556 F.2d 1283, 1284 (11th Cir. 2009)).

Here, it cannot be said that the inverse condemnation claims depend on the Notice or that the Notice is a necessary part of the inverse condemnation claims, especially given that the Notice is only mentioned in connection with Count III. The contents of the Notice are not quoted nor set forth in any detail in the Amended Complaint, nor, again, is the Notice referred to *throughout* the Amended Complaint. Thus, although Plaintiffs were required to

allege compliance with Section 768.28(6)(a) in order to state their negligence claim,[4] the content of the Notice is not central to Plaintiffs' claims.[5]

Accordingly, the undersigned finds that it would be improper to consider the Notice at the motion to dismiss stage. And, as discussed above, absent the reference to the August 1, 2017 date in the Notice, there is no basis in the Amended Complaint for the City's claim that Plaintiffs' claims accrued on August 1, 2017, such that they are barred by the statute of limitations.

c.  The Accrual Date

Even if the Court considers the Notice of Claim, Plaintiffs' allegations, construed in the light most favorable to Plaintiffs, do not demonstrate that the inverse condemnation claim accrued on August 1, 2017.

In the Motion to Dismiss, the City argues that the "physical invasion" of Plaintiffs' Properties occurred upon the first rainfall-related flooding event allegedly caused by the Roadway Improvements. Based upon Plaintiffs' Notice of Claim and the allegations in the Amended Complaint, the City avers the first flooding event happened on August 1, 2017. Therefore, the City argues that Plaintiffs' inverse condemnation claim accrued on August 1, 2017, and the claim—which was filed on August 5, 2021—is untimely. *See* Mot. at 7–8.

---

[4] Where a plaintiff fails to allege compliance with Section 768.28(6)(a), the Court is required to dismiss the plaintiff's claims for failure to comply with conditions precedent. *See Debose v. Univ. of S. Fla.*, 178 F. Supp. 3d 1258, 1274 (M.D. Fla. 2016).

[5] The City's counsel pointed out at the hearing, and the undersigned agrees, that the authority regarding the question of centrality of documents to claims does not address whether a document central to only one count of a complaint but not the others make a difference in the analysis. It is a distinction without a difference because the document does not satisfy the centrality requirements in general.

Plaintiffs counter that even if the first rainfall event occurred on August 1, 2017, it is not clear that their claim for inverse condemnation accrued on that date.

The question, then, is whether Plaintiffs' inverse condemnation claim accrued when the first rainfall event occurred after the Roadway Improvements, as the City argues, or at some point between August 2017 and February 2021, when Plaintiffs allege they became aware the Properties would continue to flood after each significant rain event due to the City's actions in connection with the Roadway Improvements.

"In general, a takings claim accrues when all events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Boling v. United States*, 220 F.3d 1365, 1370 (Fed. Cir. 2000) (internal quotation and citation omitted). The key date for accrual purposes is the date that Plaintiffs' land had been "clearly and permanently taken." *Id.* In cases in which the government's taking of property occurs through a gradual physical process, determining the exact moment a takings claim accrues is more difficult. *3630 Investment*, 2018 WL 3213489, at *5 (quoting *Boiling*, 220 F.3d at 1370). This type of taking is generally referred to as an "environmental taking." *See id.* Examples of typical environmental takings include sediment slowly accumulating in the bottom of a boat basin until boats can no longer use the basin and seawalls slowly eroding until the impact is eventually significant enough that it is noticeable.

In cases involving such gradual environmental takings, courts apply the stabilization doctrine to determine when the environmental event occurred and, thus, when the claim accrued. As Judge Moreno explained in *3630 Investment Corp. v. Miami-Dade County.*:

> The "stabilization doctrine [ ] does not permit a claimant to delay bringing suit until any possibility of further damage has been removed." *Mildenberger v. United States*, 643 F.3d 938, 946 (Fed. Cir. 2011). "[T]he touchstone for any stabilization analysis is determining when the environmental damage has made such

substantial inroads into the property that the permanent nature of the taking is evident and the extent of the damage is foreseeable." *Boling*, 220 F.3d at 1373.

2018 WL 3213489, at *2.

Plaintiffs contend the Court should apply the stabilization doctrine to determine the accrual date in this case on the grounds they did not and could not have known that the flooding and ensuing damages to the Properties was the result of the Roadway Improvements at the time of the first flooding event.

The City argues that the stabilization doctrine does not apply because the instant case does not present an environmental taking. As the City points out, Plaintiffs do not allege that the flooding gradually arose on the Properties over time, but, instead, Plaintiffs allege the Properties flood each time there is a significant rain event. Relying on the First District Court of Appeal decision in *Judkins v. Walton County*, 128 So. 3d 62 (Fla. 1st DCA 2013), the City argues that each rainfall event is a discreet, sporadic, and temporary event, and Plaintiffs' claim accrued and the limitations clock started ticking with the first rainfall event to cause flooding on the Properties because Plaintiffs knew or should have known that the flooding was caused by the Roadway Improvements given that prior to the Roadway Improvements such flooding had not occurred. Mot. at 8.

Plaintiffs aver that the *Judkins* case is distinguishable because it was decided on summary judgment and because discovery revealed that the property in *Judkins* was no longer improvable after the first flooding event that occurred on the property. Plaintiffs allege that, unlike the plaintiff in *Judkins*, Plaintiffs were able to remediate the Properties in this case after the first flood and it was not apparent after the first flood event that the flooding resulted from the Roadway Improvements as opposed to a malfunctioning sewer pump. *See* Resp. at 6-7.

The undersigned agrees with the City that the allegations in the Amended Complaint are not consistent with an environmental taking and, therefore, this is not a case in which application of the stabilization doctrine is warranted. Nevertheless, it is not apparent from Plaintiffs' allegations, even if the Notice is considered, that Plaintiffs' claim accrued on August 1, 2017. There are too many factual issues to be resolved for that determination to be made now.

As set forth above, "a takings claim accrues when all events which fix the government's alleged liability have occurred *and the plaintiff was or should have been aware of their existence.*" *Boiling*, 220 F.3d at 1370 (emphasis added). Plaintiffs allege in the Amended Complaint that after the first flooding event occurred in August 2017, they believed the flooding was caused by a failing pump station in the vicinity of the Properties and that it was not until the Properties flooded two other times in 2020 and 2021 that they realized this was a reoccurring problem attributable to the Roadway Improvements. *See* Am. Compl. at ¶¶ 15–18. The Amended Complaint reflects this is not a case in which it flooded every time it rained after the Roadway Improvements and, therefore, as the City argues, it was so obvious that Plaintiffs should have realized the cause of the flooding the first time it occurred. Indeed, as alleged in the Amended Complaint, the first flooding event occurred nearly a year after the Roadway Improvements were done, and the next two events occurred three and four years later. And even if Plaintiffs should have known after the first flooding event, it is not apparent from the face of the Amended Complaint that the damage or the extent of it was evident on the day of the flooding event or at some time thereafter. The Amended Complaint indicates the flooding followed a rainfall event in August 2017, but it does not indicate how soon after the rainfall event the flooding occurred or caused damage.

17

Taking the allegations in the Amended Complaint as true and viewing those allegations in the light most favorable to Plaintiffs, it is not apparent from the face of the Amended Complaint that the claim in Count I for inverse condemnation under the Florida Constitution is barred by the applicable statute of limitations. Similarly, it cannot be said that it appears beyond a doubt that Plaintiffs can prove no set of facts showing the inverse condemnation claim is timely.

Accordingly, the undersigned finds that the Motion to Dismiss must be denied as to Count I.

### 2. Count II

In Count II, Plaintiffs allege an inverse condemnation claim pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. The City contends this claim is also barred by a four-year statute of limitations. In response, Plaintiffs point to federal case law applying a six-year statute of limitations for federal Takings Clause claims. The parties agree, as does the undersigned, that the Eleventh Circuit has not yet addressed which statute of limitations applies to federal inverse condemnation claims against a local government.

In any event, and as discussed above, this Court need not reach that issue at this stage of the proceedings. For the reasons set forth above regarding Count I, the Amended Complaint does not conclusively establish the accrual date of Plaintiffs' federal inverse condemnation claim. A statute of limitations defense cannot be heard on a motion to dismiss unless the operative pleading shows on its face that the limitations period has run. *Maale v. Kirchgessner*, No. 08-80131-CIV, 2008 WL 11333757, at *5 (S.D. Fla. Dec. 31, 2008) (Dimitrouleas, J.) (citation omitted). Thus, even if the shorter period applies, the Motion must be denied as to Count II for the reasons set forth as to Count I.

Accordingly, the City's Motion to Dismiss Count II should also be denied. The undersigned notes that nothing in this Report and Recommendation precludes the City from asserting the statute of limitations as an affirmative defense to Counts I and II pursuant to Federal Rule of Civil Procedure 8(a).

### B.   *Negligence Claim (Count III)*

In Count III of the Amended Complaint, Plaintiffs assert a negligence claim based on the City's alleged failure to consider the impacts that the Roadway Improvements would have on the Properties, including the changes in elevation, and the City's alleged failure to remedy the persistent flooding of the Properties caused by the Roadway Improvements and the failing drainage system associated with the Roadway Improvements. Am. Compl. at 10–12.

The City asserts the negligence claim is also time barred based on the four-year statute of limitations prescribed in Section 95.11(3)(a) of the Florida Statutes for negligence claims. Alternatively, the City argues that even if Plaintiffs' negligence claim was timely filed, the City is entitled to sovereign immunity because Plaintiffs failed to comply with the three-year deadline for the submission of pre-suit notice of negligence claims against the City, as provided in Section 768.28(6) of the Florida Statutes, and because the factual allegations in Plaintiffs' Amended Complaint point only to discretionary, planning-level decisions—not operational acts—for which the City has not waived immunity from suit. *Id.* at 12. Plaintiffs respond, as they did with respect to Counts I and II, that it is not apparent from the face of the Amended Complaint when the claim accrued and, as such, whether it is time barred. Plaintiffs also aver that their claims arise from operational level functions for which the City has waived immunity.

### 1.   Statute of Limitations As To Negligence Claims Generally

In Florida, an action founded on negligence must be commenced within four years from the time the cause of action accrues. Fla. Stat. §§ 95.11(3)(a), 95.031. With respect to accrual, "[a] statute of limitations 'runs from the time the cause of action accrues' which, in turn, is generally determined by the date 'when the last element constituting the cause of action occurs.'" *Hearndon v. Graham*, 767 So. 2d 1179, 1184–85 (Fla. 2000) (quoting Fla. Stat. § 95.031); *see also Kipnis v. Bayerische Hypo-Und Vereinsbank, AG*, 784 F.3d 771, 781 (11th Cir. 2015) ("A cause of action accrues when the last element constituting the cause of action occurs."), *certified question answered*, 202 So. 3d 859 (Fla. 2016). There is a statutory exception to Florida's general rule that a cause of action accrues upon occurrence of its last element. The "delayed discovery" exception operates to postpone accrual "until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action." *Kipnis*, 784 F.3d at 781 (citing *Hearndon*, 767 So. 2d at 1184); *see also Gratchev v. Gratchev*, No. 20-60022-CIV, 2022 WL 2752955, at *6 (S.D. Fla. July 14, 2022) (Singhal, J.) (stating a claim for negligence under Florida law accrues "when the plaintiff either knows or should have known that he suffered damages").

As discussed above, the factual allegations in the Amended Complaint do not conclusively establish the accrual date of Plaintiffs' claims. That is, a determination cannot yet be made regarding when Plaintiffs knew or should have known that they suffered damages (in the form the ongoing flooding causing permanent damage to their Properties) as a result of the City's Roadway Improvements and the failed drainage system.

Moreover, Plaintiffs' negligence claim also pertains to the City's alleged failure to remedy the failing pump stations after completion of the Roadway Improvements. In the

Amended Complaint, Plaintiffs allege they learned between August and September 2017 that the stormwater system associated with the Roadway Improvements had failed, thereby causing flooding of the Properties. If Plaintiffs' negligence claim accrued between August and September 2017, the claim was brought within the four-year statute of limitations and is, therefore, not time barred.

As with Counts I and II, it is not apparent from the face of the Amended Complaint that Plaintiffs' negligence claims are barred by the applicable statute of limitations. Such a determination is best left to a later stage of the proceedings. Accordingly, the City's Motion to Dismiss Plaintiffs' negligence claim in Count III on grounds it is barred by the statute of limitations should be denied. As noted above regarding Counts I and II, the City may plead the statute of limitations as an affirmative defense to Count III.

### 2. Sovereign Immunity

Sovereign immunity protects a state or its subdivision from suit unless the state has waived its sovereign immunity or Congress has abrogated sovereign immunity. *Stroud v. McIntosh*, 722 F.3d 1294, 1297-98 (11th Cir. 2013). If a complaint contains a claim that is facially subject to an affirmative defense, such as sovereign immunity, the claim may be dismissed under Rule 12(b)(6). *LeFrere v. Quezada*, 582 F.3d 1260, 1263 (11th Cir. 2009); *see also Merchant v. United States Dep't of Educ. Off. of Civil Rights*, No. 21-13712, 2022 WL 15561847, at *3 (11th Cir. Oct. 28, 2022) (affirming district court's dismissal of claims barred by doctrine of sovereign immunity).

Florida has waived its sovereign immunity in connection with certain tort actions. *See generally* Fla. Stat. § 768.28. However, to maintain a claim in tort against the State of Florida or one of its agencies, a plaintiff must meet the pre-suit notice requirements of Section 768.28.

*See McLaughlin v. Fla. Int'l Univ. Bd. of Trs.*, 533 F. Supp. 3d 1149, 1173 (S.D. Fla. 2021) (Moore, J.). Pursuant to Section 768.28, Florida's sovereign immunity statute, "[a]n action may not be instituted on a claim against the state or one of its agencies or subdivisions unless the claimant presents the claim in writing to the appropriate agency . . . within 3 years after such claim *accrues* and . . . the appropriate agency denies the claim in writing ..." Fla. Stat. § 768.28(6)(a) (emphasis added). Generally, an action pursued without first satisfying the statutory notice provision must be dismissed without prejudice, so that a plaintiff may amend the complaint to comply with the requirement. *Schaeffer v. Sch. Bd. of Broward Cnty., Fla.*, 69 F. Supp. 3d 1327, 1329 (S.D. Fla. 2014) (Bloom, J.) (internal citations omitted). However, where the time for notice has expired and it is evident that the plaintiff cannot fulfill the requirement, a dismissal with prejudice is warranted.

      a.  <u>Pre-Suit Notice Requirement</u>

In Count III of the Amended Complaint, Plaintiffs allege they have complied with all conditions precedent, including providing a notice of claim to the City pursuant to Section 768.28. Am. Comp. at 11. In the Motion to Dismiss, the City argues that the negligence claim is subject to dismissal with prejudice because Plaintiffs' Notice of Claim was provided on July 8, 2021, after the three-year notice period expired based on an accrual date of August 1, 2017. As noted above, the City attached the Notice of Claim to its Motion to Dismiss.

Plaintiffs respond that the City's negligent acts constitute a continuing tort. Specifically, they assert the flooding of the Properties is continuous and recurring resulting in damages during each moderate to severe rainfall event. Therefore, Plaintiffs maintain that under the continuing torts doctrine each successive flooding since August 2017 gives rise to a

new cause of action under a theory of negligence for which the four-year statute of limitations begins to run from the time of each successive injury. *See* Resp. at 15.

In *Carlton v. Germany Hammock Groves*, the Fourth District Court of Appeal considered whether the occurrence of flooding during each wet season is a continuing tort. The appellate court reasoned as follows:

> The determination of the question whether the flooding of land gives rise to a single right or successive rights of action depends ordinarily upon whether the injury or the causative condition is permanent or temporary. The rule prevailing in most jurisdictions is that if the injury is permanent, or if the causative structure or condition is of such a character that injury will inevitably result and the amount of the damage can be determined or estimated, a single action may and should be brought for the entire damages, both past and prospective. But if the overflow is merely temporary, occasional or recurrent, causing no permanent injury to the land, or if the situation involves other elements of uncertainty, such as the possibility or likelihood of the alteration or abatement of the causative conditions, or uncertainty in regard to the future use or improvement of the land, so as to prevent a reasonably accurate estimate of future damages, it is generally held that each repetition of the overflow gives rise to a new cause of action for which successive actions may be brought.

803 So. 2d. 852, 855 (Fla 4th DCA 2002) (citing *Town of Miami Springs v. Lawrence*, 102 So. 2d 143, 146 (Fla. 1958) (holding that a continuing trespass existed where a municipality raised the elevation of a street but failed to provide adequate drainage resulting in the plaintiff's property flooding after every heavy rainfall)). The *Carlton* Court refused to grant summary judgment on the defendant's limitations-based affirmative defense because the plaintiff had "alleged sufficient facts with regards to the flooding and resulting damage occurring in the four years preceding the date suit was filed so as to urge application of the continuing torts doctrine and preclude summary judgment." *Id.* at 856. *Cf. Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1413–14 (S.D. Fla. 2014) (Hurley, J.) (finding the plaintiff failed to provide the requisite pre-suit notice for his battery claim against a municipal entity because the alleged

tort is not in the nature of a continuing tort, and, therefore, it would be futile to allow him an opportunity to provide the notice since the statutory period of limitation had expired).

Here, accepting the allegations in the Amended Complaint as true, Plaintiffs have alleged sufficient facts regarding the ongoing flooding and resulting damage occurring in the four years preceding the date this action was filed in state court. For example, Plaintiffs allege the Properties flooded in August 2017, and again in June 2020 and February 2021. Arguably, the first flooding event in August 2017 could not have caused a permanent injury to Plaintiffs' Properties. In fact, in their Response, Plaintiffs claim the Properties were repaired and put back into use after the August 2017 flooding event. Plaintiffs also claim they were unsure about the cause of the flooding because they learned that pump stations in the vicinity of the Properties had failed. Therefore, pursuant to the continuing torts doctrine, Plaintiffs' July 8, 2021 pre-suit notice would be timely because the City was notified within three years of the occurrence of continuous flooding events in June 2020 and February 2021 that Plaintiffs intended to file suit.

Accordingly, to the extent the City's Motion to Dismiss Count III is based on timeliness of the Notice of Claim, the Motion should be denied.

b.  Planning vs. Operational Decisions

The City also argues that it is immune from suit based on Plaintiffs' negligence claims in Count III because the Amended Complaint alleges only discretionary planning-level functions for which the City has not waived its immunity. Plaintiffs respond that the City is not entitled to sovereign immunity because the City's alleged negligence stems from operational decisions regarding the installation and maintenance of existing and new drainage systems.

24

Florida's "abiding test for determining whether a government entity has sovereign immunity for its tortious acts is the operational/planning formula set forth in *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010 (Fla. 1979). Decisions regarding "certain policy-making, planning or judgmental governmental functions" are not subject to the legislature's waiver of sovereign immunity in Section 768.28. *Id.* at 1020–21. But government entities are not immune from liability for their torts arising from operational functions. *Id.*

In Count III of the Amended Complaint, Plaintiffs allege the City has an existing and continuing duty to properly maintain all abutting roadways in a manner that preserves the Properties' drainage rights. Plaintiffs allege the stormwater system associated with the Roadway Improvements failed causing flooding and additional damage to the Properties. Specifically, the changed elevation of the roadways abutting the Properties and the associated drainage pump failures cause the flow of stormwater to reverse and be redirected onto the Properties. Am. Compl. at 14–18. Plaintiffs also claim the City negligently failed to remedy the persistent flooding caused by the Roadway Improvements. *Id.* at 11–12.

The City argues that such actions, including the alleged failure to consider the impacts of the Roadway Improvements on the Properties in light of the elevation changes, constitute planning level decisions.

The Florida Supreme Court has determined that maintenance of a drainage system by a government entity is an operational-level decision. *See Sw. Fla. Water Mgmt. Dist. v. Nanz*, 642 So. 2d 1084 (Fla. 1994) (holding state's statutory waiver of sovereign immunity covered property owners' claim against county and water management district, alleging negligence in their operation, control, and maintenance of stormwater drainage system, resulting in flooding of property); *see also Slemp v. City of North Miami*, 545 So. 2d 256 (Fla. 1989) (holding

a city was liable due to its failure to maintain and operate stormwater pumps properly, resulting in flooding of plaintiff's property).

As discussed above, the allegations in the Amended Complaint indicate that Plaintiffs' negligence claim is based on damages allegedly caused by the redirection of stormwater as well as damages resulting from faulty stormwater and sewer drainage pumps. Viewing those allegations as true and in the light most favorable to Plaintiffs, it is unclear whether some or all of Plaintiffs' allegations are based on operational or discretionary functions.   That determination will likely be borne out in discovery.

Accordingly, the City's Motion to Dismiss based on sovereign immunity should be denied at this stage, although the City is not precluded from raising the issue at a later time in a motion for summary judgment.

## RECOMMENDATION

Accordingly, for the reasons set forth above, the undersigned respectfully recommends that the City of Miami Beach's Motion to Dismiss Plaintiffs' Amended Complaint [ECF No. 6] be **DENIED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable James Lawrence King, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 22nd day of December 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE


Copies to:
Hon. James Lawrence King, *U.S. District Judge*
Counsel of Record